**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4613-16T1

DARRAN CASSAR,

      Petitioner-Appellant,

v.

NEW JERSEY RACING
COMMISSION,

      Respondent-Respondent.

_____

      Submitted September 26, 2018 – Decided  October 31, 2018

      Before Judges Accurso and Moynihan.

      On appeal from the New Jersey Racing Commission, Docket No. NJRC-16-H-14-MD.

      Arleo & Donohue, LLC, attorneys for appellant (Timothy M. Donohue, on the brief).

      Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; George N. Cohen, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Darran Cassar appeals from a final decision of the New Jersey Racing Commission (Commission) suspending his license as a Standardbred trainer for one year, "barring him from all grounds subject to the Commission's jurisdiction," and imposing a $1000 fine after a post-race urine sample from a horse he trained tested positive for morphine and hydromorphone.[1] The Commission adopted the administrative law judge's (ALJ's) conclusion that appellant violated regulations imposing liability on trainers who fail to guard any horse with which they are "charged with the custody, care and responsibility . . . against the administration of any drug or substances foreign to the natural horse," N.J.A.C. 13:71-23.6, and fail–"to protect the integrity of horse racing [and] guard the health of the horse," N.J.A.C. 13:71-23.1(a). Appellant was also found to be in violation of the regulation prohibiting conduct deemed detrimental to harness racing, N.J.A.C. 13:71-7.29(a)(13). He argues the Commission's penalty was arbitrary and capricious in that the Commission "inexplicably eschew[ed] reliance upon the same [Association of Racing Commissioners International (ARCI)] guidelines that it admittedly consulted" before imposing the penalty – guidelines appellant contends should have been

---

[1] The Commission's decision also disqualified the horse, which had finished first, and redistributed the purse.

considered by the Commission – and that the penalty was "grossly disproportionate" to another recently imposed for a similar offense. The Commission acted within its authority in determining the penalty. Consequently, we affirm.

The Commission found that both morphine and hydromorphone were listed in the ARCI Uniform Classification Guidelines for Foreign Substances and Recommended Penalties as Class 1 drugs. It accepted the ALJ's findings that: hydromorphone found in appellant's horse was a metabolite of morphine; appellant failed "to protect the horse from the administration of morphine" and "to protect the integrity of the race and . . . to guard the health of the horse"; and appellant's conduct was detrimental to the sport. It, however, rejected the ALJ's penalty, determining the ALJ's reduction of the one-year suspension and $1000 fine imposed by the Commission's Board of Judges to a fifteen-day suspension and $500 fine was based on the penalties set forth in the ARCI guidelines for the "unintentional administration of morphine."

In determining its penalty, the Commission adverted to the testimony of John Tomasello – "a racing official [employed by the Commission serving] in the capacity of presiding judge at the Meadowlands Race Track" – during proceedings before the ALJ, "regarding the Commission's procedure for

imposing penalties and the factors that must be considered and weighed." The Commission noted Tomasello's acknowledgement that the Board of Judges consulted the ARCI guidelines "regarding its classification of drugs and recommended penalties" but found Tomasello clearly stated that the "Commission has not adopted the ARCI [g]uidelines and those penalty recommendations are used solely as guidelines." The Commission accepted Tomasello's testimony, including his opinion "that the appropriate penalty for this morphine positive, where there is no indication that the drug was intentionally administered, is a [one-year] suspension and $1[]000 fine."[2]

In considering appellant's challenge to the penalty imposed by the Commission, we heed our Supreme Court's recent iteration of our standard of review:

> Traditionally, we give substantial deference to an agency's imposition of a disciplinary sanction, based on its "expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. at 28. "In light of the deference owed to such determinations, when reviewing administrative sanctions, 'the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be

---

[2] Although the Commission described Tomasello's proposed penalty as one for a "morphine positive," Tomasello's sanction was based on the finding that morphine and hydromorphone were administered to the horse. The ALJ's penalty was based on the administration of morphine alone, after finding hydromorphone was present as a metabolite of morphine.

shocking to one's sense of fairness.'" Id. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)). That standard gives the agency a wide berth of discretion. Our task is not to substitute our judgment for that of the agency, but rather to stay our hand even if we would have reached a different result. Ibid. Only a patently unreasonable sanction would call for this Court's intervention.

[In re Hendrickson, __ N.J. __, __ (2018) (slip at 16-17) (alteration in original).]

The Court previously recognized that the Legislature granted the Commission

full regulatory power over horse racing in this state. State v. Dolce, 178 N.J. Super. 275, 285 (App. Div. 1981); N.J.S.A. 5:5-22 to -109. In particular, the Racing Commission is empowered to prescribe the rules, regulations, and conditions under which all horse races are conducted, N.J.S.A. 5:5-30, and to regulate the licensing of those connected with horse racing, N.J.S.A. 5:5-33. Furthermore, the State has a vital interest in maintaining the integrity of the horse-racing industry. Dolce, N.J. Super. at 284. Towards that end, N.J.S.A. 5:5-33 imposes on the Racing Commission a statutory obligation "to revoke or refuse to issue a license if in the opinion of the Commission the revocation or refusal to issue such license is in the public interest."

[Delguidice v. N.J. Racing Comm'n, 100 N.J. 79, 90 (1985).]

To that end, the regulatory scheme affords the Commission broad discretion in meting out penalties for violations including:

5

1. Denial, revocation or suspension of license;

2. Monetary fines not exceeding $ 50,000 for each violation. The steward and board of judges may not impose directly a fine in excess of $ 5,000.

3. Suspension from one or more activities at one or more tracks;

4. Expulsion from racing in New Jersey;

5. Forfeiture of purse;

6. In addition to the foregoing, the Commission may impose as a condition to licensing such conditions as it shall deem appropriate to secure compliance with the rules, regulations and directives of the Commission.

[N.J.A.C. 13:71-2.3(a).]

Although the Commission acknowledged its adoption of the ARCI guidelines pertaining to enhanced-penalty provisions for repeat offenders, N.J.A.C. 13:71-23.7(c), and threshold levels for prohibited controlled therapeutic medications, N.J.A.C. 13:71-23.1(b)(14), it has not adopted the ARCI guidelines pertaining to penalties for first-time morphine positives. Its decision to decline adoption of those penalty provisions because it "does not agree with many of the recommended penalties" and to treat the guidelines only as "a useful tool" is within the prerogative granted the Commission by the Legislature. See N.J. Racing Comm'n v. Elliot, 290 N.J. Super. 140, 146 (App.

Div. 1996) (holding "with the principles of 'trainer responsibility' and 'no medication' clearly established in law, it is well within the authority and discretion of the Commission to impose severe sanctions for violations of those principles" it saw as "especially dire").

We do not agree with appellant's argument that the Commission was required to abide by or consult the ARCI guidelines because Tomasello referenced them when he testified why he believed a one-year suspension was appropriate.[3] The Commission was vested with the authority to determine the penalty; it was not bound by Tomasello's or the ALJ's opinion regarding the sanction. N.J.A.C. 1:1-18.6(b).

The Commission conceded there was no evidence the morphine was intentionally administered to the horse. It concluded, however, that appellant did not "protect the horse under his care" and that the ALJ's penalty was inappropriate where the presence of morphine, a Class 1 drug, was detected.

---

[3] The ARCI guidelines in effect at the time of appellant's violation recommended a Class B penalty for morphine and a more severe Class A penalty for hydromorphone, although both were Class 1 drugs. ARCI amended its guidelines subsequent to the violation but prior to the hearings to change the penalty classification for morphine to Class A. The ALJ appears to have relied on the unamended ARCI guidelines. We need not consider which of those guidelines should have been considered because the Commission declined to adopt either version.

Considering the Legislature's broad grant of power to the Commission, N.J.S.A. 5:5-22, and the "intent of [the administrative] rules to protect the integrity of horse racing, to guard the health of the horse, and to safeguard the interests of the public and racing participants through the prohibition and/or control of all drugs and/or substances foreign to the natural horse," N.J.A.C. 13:71-23.1(a), we do not conclude the imposition of a one-year suspension and $1000 fine to be "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." In re Herrmann, 192 N.J. at 28-29. The balance of appellant's argument regarding the disproportionality of the penalty to others imposed is without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4613-16T1